## COUNTY OF PROVIDENCE, OCTOBER TERM, 1865, AT PROVIDENCE.

PRESENT:

HON. SAMUEL AMES, CHIEF JUSTICE.
HON. GEORGE A. BRAYTON, } JUSTICES.
HON. THOMAS DURFEE,

WILLIAM R. TAYLOR, Executor, et al. *v.* WILLIAM R. STAPLES et als., Trustees.

As a general rule, a court of equity will not enforce a voluntary agreement, or perfect a merely promised or imperfect gift. There is *locus pœnitentiæ*, as long as it is incomplete.

Where the evidence adduced in support of a bill for the specific performance of an alleged agreement to convey an estate, is adjudged by the court to show merely an intent, on the part of a wealthy father while in life, to give to his son that estate, which intent the father, from forgetfulness or some other cause, never executed, the bill will be dismissed with costs.

A father, possessed of great wealth, makes upon his account-book an entry to the credit of a son, in these words:—" By further allowance to pay for house, &c., $5,000;" and long after the death both of father and son, the legal representatives of the son, by suit in equity, seek to recover from the legal representatives of the father the said sum, with interest from the date of said entry (May 30, 1837); *Held*, That the entry is but an indication of an intention on the

father's part, and not a promise, founded upon a consideration cognizable by a court of equity,—neither the fact, that the father had trained up the son in idleness, as the heir presumptive of inexhaustible wealth; nor the fact that this "allowance" was consistent with a "family arrangement," existing at the date of said entry; nor the fact, that unless this claim for $5,000 and interest were allowed and paid would this son receive of his father's accumulations so much as was received by his brothers and sisters respectively,—constituting a valuable consideration,—upon which alone the court must act, unheeding a consideration merely "moral" or "meritorious."

A court of equity will not interpose to remove a cloud from the title of an estate, held by possession for twenty years or more under the Statute of Possessions, for the reason, among others, that the complainant has at law a remedy entirely adequate to his protection.

THIS was a suit in equity, brought by the executors and devisees of William Bradford D'Wolf, deceased, against William R. Staples and Edward D. Pearce, trustees of the residuary estate of James D'Wolf, deceased, under the twelfth clause of his will, and James D'Wolf Perry, administrator, with the will annexed, on the estate of the said James D'Wolf, deceased.

The complainants, in substance, set forth and claimed, that upon the books of original entry of James D'Wolf, deceased, there appears on the debit side, in his proper hand-writing, a charge to William Bradford D'Wolf, his son, in these words:—"To house and lot per deed, with cost of stable, $4,000;" and upon the credit side of those books a credit to William Bradford D'Wolf, in these words:—"By further allowance to pay for house, $5,000." That said two entries were made at the same time, and somewhere between October 19th, and October 28th, 1837. That said James D'Wolf had five sons, of whom William Bradford was the youngest. That to the four of these who were living at his decease, the father, from time to time, made gifts and allowances, the same being made to each, in consideration of those made to the others, and those to William Bradford D'Wolf being much smaller than those made to the others. That it was the intent and meaning of said James D'Wolf, for such consideration, to have conveyed to William Bradford D'Wolf by deed of gift, the house and lot referred to in the above entries, but through forgetfulness or mistake the deed was never executed. The bill then described a certain estate in Bristol, as being the estate referred to, and claimed that said

William B. D'Wolf took possession of the same, as his own, in 1836, and continued in the quiet and uninterrupted seisin and possession thereof, from that date till his death, in 1862; and that, after his death, the devisees named entered into possession of the same. That the defendant trustees claim the house and lot described, as part of the residuary devised by the twelfth clause of James D'Wolf's will.

The bill claimed and prayed, 1st. That if the title to the estate is decreed to be in them, the complainant devisees, they are entitled to have the same conveyed to them by said trustees. And, 2d. As it was the intent of said James D'Wolf, to have made an allowance of $5,000,—as appears by these entries aforesaid,—to William Bradford D'Wolf, they pray that the said trustees may be decreed to pay them out of the funds in their hands, $1,000, with interest. Or, 3d. If the title to the estate is decided not to be in the devisees of William Bradford D'Wolf, then the trustees should be decreed to pay the whole amount of the alleged allowance, to wit, $5,000 with interest, to the complainant executors.

No relief whatever was prayed for against James D'Wolf Perry, administrator as aforesaid, who asked, in his answer, that the bill be dismissed as to him.

The defendant trustees, by their answer, denied all right and equity of the complainants to any relief. They admitted that there is such an estate in Bristol as is described in the bill, which was the property of James D'Wolf, deceased, and which they now hold as trustees of the residuary, but deny any uninterrupted and quiet possession by William Bradford D'Wolf or by any of the complainants, claiming that since the death of James D'Wolf, the same has always been held by the trustees under the twelfth clause of his will, the same not having been specifically devised, and by force of the will having fallen into the residue. They denied all knowledge of any intent to convey, on the part of James D'Wolf, and claim that the said William Bradford D'Wolf himself, by his bill filed in this court, as their predecessor in the trust, negatives the idea that he ever had any such possession as the bill claims; for he therein prayed

only that he might be allowed to retain, out of the trust property, $5,000 and interest, neither making nor alleging any claim for the house and lot.

As to the claim for the money made on the trustees, they denied that it could be enforced against them, either in whole or in part, since they were trustees for specific purposes under a specific clause of the will; and insisted that it was a claim against the estate of James D'Wolf in the hands of his executors or administrator, and can only be enforced against them or him.

Testimony was taken on both sides, and the case came up for hearing on bill, answers and proofs.

The facts of the case, and the points raised and discussed by counsel, are sufficiently detailed in the opinion of the Court.

*T. C. Greene, with whom was R. W. Greene, for the complainants,* who cited, to the point that the gift of the estate, under the circumstances in proof, was a valid gift, 2 Story's Eq. Juris. 761 ; *Eaton* v. *Whitaker,* 18 Conn. 222–229 ; and, as bearing upon a title by adverse possession, Angell on Limitations (3d ed.) 490, § 396; *Draper* v. *Shute,* 25 Missouri, 204 ; *Hole* v. *Rittenhouse,* 37 Penn. 116.

*Parsons, with whom was Blake, for the defendants,* who cited, to the point that the complainants had unreasonably delayed to prosecute their pretended claim, 2 Story's Eq. § 959 *a* and 1525, note ; 1 Daniel's Ch. Pr. 622 and notes ; *Pratt* v. *Vattier,* 9 Peters, 405, 416, *et seq. ; McKnight* v. *Taylor,* 1 Howard, 167 ; and as to the requisites to a valid gift, *Antrobus* v. *Smith,* 12 Vesey, 39 ; *Remington* v. *Gittings,* 2 Gill & Johnson, 208 ; 7 Johnson's R. 26 ; 18 Ib. 145 ; 2 Esp. R. 663 ; 2 Kent's Com. 438.

DURFEE, J. This bill is brought by the representatives and devisees of the late William Bradford D'Wolf, against the trustees of the residuary estate of the late James D'Wolf, the father of said William Bradford, and against the administrator, with the will annexed, on the estate of said James D'Wolf. It prays that the defendant trustees may be decreed to release and quitclaim to the complainant devisees a certain lot of land, with the house and improvements thereon, situate in Bristol and described in the bill; and also to pay to the other complainants the sum

Taylor, Executor, et al. *v.* Staples et als., Trustees.

of one thousand dollars, with interest from October, in 1837, or, in the alternative that this decree is refused, to pay over to the complainants, last named, the sum of five thousand dollars, with interest from October, in 1837.   One of the grounds,—and the chief ground on which the complainants claim the relief prayed for,—is two entries made in the ledger of said James D'Wolf, in his account with said William Bradford, and in his own hand-writing.   One of these two entries, which is on the debit side of the account, under date of October 19th, 1837, is as follows, to wit:—"To house and lot per deed, with cost of stable, &c., $4,000.00 ; " the other, which is on the credit side, under date of May 30th, 1837, is as follows, to wit:—"By further allowance, to pay for house, &c., $5,000.00."   The account consists of many other items, some preceding and some following these two entries, all of which are in the hand-writing of Byron Diman, who was the confidential clerk of James D'Wolf, and who testifies that the two entries not in his hand-writing were made by James D'Wolf, both at the same time, and some time in the latter part of October, 1837, though he cannot state the precise day.   He also testifies that the house and lot designated in the entry on the debit side of the account, was the house and lot described in the bill, and that it was then occupied by William Bradford D'Wolf.   The complainants have also put in testimony going to show that William Bradford continued in the occupation thereof till the death of his father, in December, 1837, when he removed to the homestead, so called; and that, afterwards, during some years at least, he let the house and lot and collected the rents, and was at the expense of keeping the same in repair.   And from these facts, taken in connection with the entries, they infer an agreement, on the part of James D'Wolf with William Bradford D'Wolf, to convey to the latter the house and lot in question, and contend that this agreement, having been partly performed by the possession allowed to William Bradford of said house and lot, and by his reparation thereof, is of such a character that, though not wholly in writing, it can be and ought to be specifically enforced.

The complainants, to further strengthen their case, show that

William Bradford was the youngest of four sons who survived their father; and they allege, and appeal to the ledger of James D'Wolf to prove, that his gifts and allowances to his other sons were much larger in amount than the sums allowed to William Bradford; and, also, they allege that it was the intent of James D'Wolf, in consideration of his gifts and allowances to the other sons, to have conveyed to William Bradford the house and lot in question,—the gifts and allowances to each son being made with reference to, and in consideration of, the gifts and allowances made to the other sons,—and that the deed was never executed, through mistake or forgetfulness. This allegation is not admitted by the answer, and is supported by little except its intrinsic probability.

Can we, on the case thus made, grant the complainants the relief they seek? Can we compel the defendants to convey to them the house and lot debited to William Bradford? The defendants say, there is no consideration for such a conveyance, and that, therefore, we cannot compel it. The complainants answer, that the possession and reparation of the house and lot by William Bradford is a sufficient consideration. Is the answer correct? Since the death of James D'Wolf, William Bradford has been in possession of the house and lot only as landlord, enjoying the rents and profits, and does not appear to have laid out in repairs on them more than enough to keep them in a condition to yield rents and profits. His relation to the house and lot has, apparently, been no detriment to him and no benefit to the estate of James D'Wolf, and it does not, therefore, present the usual characteristics of a valuable consideration. Furthermore, there is no evidence that William Bradford ever came under any obligation to his father to continue to retain and repair the house and lot, if his father would convey them to him, or that his doing so was not purely a matter of choice. But of course a consideration—if such it may be called—which is to follow an agreement, and which it is optional with the party to be benefitted by the agreement to furnish or not, is not a consideration in any legal sense of the term. And, indeed, the idea that there was to be any consideration for the house and lot does

not appear to have entered the minds of either father or son. On the contrary, so far as William Bradford is concerned, his own son,—whose deposition the complainants have put into the case,—testifies that he has " often heard him (William Bradford) say that his father (James D'Wolf) *gave* him the house and lot." We think this statement was correct, except that William Bradford denominated that a gift which, though promised or intended, was never effectuated as such.    We are of the opinion that James D'Wolf, when he made the entries in his ledger, meant to give, by deed, to William Bradford the house and lot debited to him, and that he subsequently omitted,—probably through forgetfulness,—to carry his intention into effect.

Can we supply the omission ?    There can be no doubt that, as a general rule, a court of equity will not enforce a voluntary agreement, or perfect a merely promised or imperfect gift. " There is no case," says Sir William Grant, M. R., in *Antrobus* v. *Smith,* 12 Vesey, Jr. 39, " in which a party has been compelled to perfect a gift which, in the mode of making it, he has left imperfect.    There is *locus pœnitentiæ* as long as it is incomplete." This doctrine is recognized and applied in numerous cases, some of which present full as strong claims for relief as this does, and that too without the delay in prosecuting them which is so marked a feature of this.    *Tate* v. *Hibbert,* 2 Vesey, Jr. 112 ; *Ward* v. *Turner,* 2 Vesey, Sen. 431 ; *Pennington* v. *Gittings,* 2 Gill & Johns. R. 208 ; *Thompson* v. *Dorsey,* 4 Md. Ch. Dec. 149 ; *Hitch* v. *Davis,* 3 Ib. 266 ; *Edwards* v. *Jones,* 1 My. & Cr. 226 ; *Dillon* v. *Coppin,* 4 Ib. 647 ; *Meek* v. *Kettlewell,* 1 Hare, 464. The rule has, indeed, been qualified in some cases in order to give effect to a voluntary assignment of a chose in action or an equitable estate, where the assignor had done all he could to divest himself of the property ; but even in these cases the rule is admitted to hold good where there is no obstacle to the direct transfer of the legal title.    *Kekewick* v. *Manning,* 1 De Gex, Mac. & Gord. 176 ; 12 Eng. L. and Eq. 120, and cases there cited ; *Voyle* v. *Hughes,* 23 Ib. 271 ; but see, also, in the Am. Law Reg. of May, 1853, a criticism strongly impugning the authority of *Kekewick* v. *Manning.*    A further qualification of the rule was

Taylor, Executor, et al. *v.* Staples et als., Trustees.

attempted by Sir Edward Sugden, who held, in *Ellis* v. *Nimmo*,
1 Ld. and Goold, 333, 10 Cond. Ch. R. 534, that a voluntary
contract in writing, by which a father undertook to provide for
a child, should be enforced, being founded on a meritorious
consideration ; but this decision has been discredited by later
English cases, and, at least where the contract is sought to be
enforced against others equally meritorious, directly overruled.
*Holloway* v. *Headington*, 8 Sim. 325 ; *Dillon* v. *Coppin*, 4 My.
and Cr. 647 ; *Jeffreys* v. *Jeffreys*, 1 Cr. & P. 138 ; 2 Story Eq.
Jur. 793 b, 989, 1040 c ; White & Tud. L. C. 244 ; Lewin on
Trusts (97 Law Lib.) 99.  In this country there are cases which
hold that a voluntary agreement or promise may be enforced
in equity in favor of a wife or child, when under seal, which
imports a consideration and renders it valid at law.  *Caldwell* v.
*Williams*, 1 Bailey's Eq. 175, 176, and *McIntyre* v. *Hughes*, 4
Bibb. 186, cited in White & Tud. L. C. 247 ; but if not under
seal, it is held that the contract will not be enforced.  *Penning-
ton* v. *Gittings*, 2 Gill & Johns. 208, 217 ; *Fink* v. *Cox*, 18 Johns.
145, 149 ; *Carpenter* v. *Dodge*, 20 H. R. 595.  Considering then
the entry relating to the house and lot as the proof of an intended
gift, or promise to give, we do not think we can enforce it unless
there be some reason to make it an exception to the ordinary
rule.

The complainants contend that such a reason exists, in the
fact that William Bradford was so long in possession of the
property, and had spent his money in repairing, on the faith of
the entry debiting him with it, and that it would now be inequi-
table to withhold the title by deed which his father meant him
to have.  There would be great force in this argument, if it
were the fact that William Bradford had laid out in repairs
more than he had received in rents, and could only be reim-
bursed by a conveyance of the property itself.  But this is not
the case ; for it appears, by his own book of accounts, that the
sum of all his expenditures of this kind, from 1840 to 1861, do
not exceed $309, being an average of only about fifteen dollars
per annum, while the rents of the place, during the same period,
have varied from ninety to two hundred dollars per annum.  It

is not necessary, therefore, that the place should be conveyed
to his devisees to protect them from loss.    And even if his ex-
penditures had exceeded his receipts, it would not follow that
equity could be done only by such a conveyance.    We are not
without authorities bearing directly on this point.    Thus in
*Pinckard* v. *Pinckard*, 23 Ala. R. 649, where a father gave his
son, by a parol gift, land worth two hundred dollars, which the
son occupied for ten years, and which, during that time, had
doubled in value, the court refused to compel a conveyance.
So in *Adamson* v. *Lamb*, 3 Blackf. (Ind.) 441, it was held that
a gift by parol of real estate from father to son,—the donee
being in possession and having made improvements—vests in
the son no interest which a court of law or equity can execute.
And see also, *Black* v. *Card*, 2 Gill & Harr. (Md.) R. 100 ; *Jones*
v. *Tyler*, 6 Mich. R. 364 ; *De Veaux* v. *De Veaux*, 1 Strobh. Eq.
283 ; *Jackson* v. *Rogers*, 1 Johns. Cas. 33 ;  2 Caines Cas. 314.
And in *Rucker, &c.*, v. *Abel*, 8 B. Mon. (Ky.) R. 566, a parol gift,
from father to son, of land, on which the son entered and made
valuable improvements, was decided to be so entirely inopera-
tive, that it could not be afterwards affirmed by the deed of the
father, when in failing circumstances, as against his creditors ;
though it was held that the son was entitled to a lien on the
estate for the value of his improvements.    See also *Boyer* v.
*Davis*, 14 Texas R. 331.    In fact, the only authority that we
find, in favor of the view of the complainants, is certain cases
decided in Pennsylvania, under its mixed system of law and
equity, in which it has been held that a parol gift of land, fol-
lowed by possession and valuable improvements on the part of
the donee, should be specifically enforced, in analogy to the
specific performance of verbal contracts for the sale of land
which have been partly performed, and on the ground that the
donee would otherwise be defrauded.    *Syler* v. *Eckhart*, 1 Bin-
ney, 578 ;  *Young* v.  *Glendening*, 6 Watts, 509 ;  *Burns* v. *Suth-
erland*, 7 Barr. 103.    The obvious fault of these latter decisions
is, that for the sake of doing more than justice to the donee, they
do a great injustice to the donor.    An inchoate gift, by its very
nature, leaves to the donor a *locus pœnitentiœ*, or right to change

Taylor, Executor, et al. *v.* Staples et als., Trustees.

his mind and revoke or modify his gift,—a right which the exigences of his fortune or family may make it perfectly proper for him to exercise. Of this right the donee, or expectant donee, must be presumed to be apprised. In the absence of actual fraud, then, there is no more reason, in the eye of the law, that the donor, who has not completed the gift, should lose his land, than that the donee, who has been expecting to have the gift completed, should lose his improvements. The just claims of both parties ought to be protected, and the case of *Rucker, &c.,* v. *Abel*, shows how, by making the value of the improvements a lien on the land, this can be accomplished. In this case it is doubtful if there have been such valuable improvements as even, under the Pennsylvania decisions, would entitle the complainants to a deed of land, but we are clearly of the opinion that it ought not to be decreed in their favor, under the law, as we deem it to be more correctly declared, in the other cases above cited.

If, for these reasons, we cannot decree a release of the house and lot to the complainants, can we, with any more propriety, decree a payment to them of the five thousand dollars with interest, as prayed for in the alternative prayer of the bill. This payment is asked for by reason of the entry which, as before stated, reads as follows: "By further allowance to pay for house, &c., $5,000.00." The entry speaks of the five thousand dollars as an allowance. But the term "allowance" is ordinarily only another name for a gift or gratuity to a child or other dependent. Is there anything to show that, in this case, something different was meant? The counsel for the complainants says that James D'Wolf brought up his sons to rely exclusively on him for support; that his account with William Bradford shows that William Bradford was so brought up; and he argues that the habits and expenditures, in which he was thus encouraged, constitute a consideration for this allowance on which the court will act. Undoubtedly, if a father so brings up his children, he ought, morally speaking, not to leave them without proper provision; but we do not think a moral duty of this kind can be converted into a valuable consideration for a specific promise

or agreement. The counsel also says the entry was made to carry out a family arrangement, and with reference to, and in consideration of, the larger gifts and allowances granted to the other sons, and that for this reason the payment ought to be decreed. This argument is, we think, put rather more strongly than the evidence warrants. It is not in proof that James D'-Wolf had formed any single or settled plan to advance or assist his sons, by *equal* gifts and allowances, during his life time, or that, having carried out such a plan in regard to the other sons, he made these entries with the intention of doing the same by William Bradford, and failed of so doing by accident or mistake. The most that is proved, is, that some of the sons had profited less by the bounty of their father than others, and, if the claim of the complainants be correct, William Bradford the least of any ; and that, in this state of things, James D'Wolf made the two entries. He may have been prompted in making them by a desire to deal equally by his sons, or he may have been prompted by a regard to the special wants and necessities of William Bradford. We know not what the motive was ; but supposing that which is most favorable to the complainants, it then follows that the entries were made in compliance with the duty or dictates of paternal impartiality. If such were the motive, it was a praiseworthy one ; but it does not, in the eye of the law, amount to a valuable consideration. It is of that class which jurists term moral, or, at best, meritorious, as distinguished from valuable considerations. But, as we have seen, in the absence of a valuable consideration, the Court does not act, and, no such consideration appearing here, we must refuse the relief prayed for in this aspect of the case.

But the complainants, devisees of William Bradford, seek relief on still another ground. They allege that they have acquired a title to the house and lot, described in the bill, by twenty years' adverse possession ; that the defendants, trustees of the residuary estate of James D'Wolf, claim the house and lot as a part of said estate, whereby a cloud is thrown upon their title ; and they therefore ask that said trustees may be decreed to release or quit claim the house and lot to them.

Before we inquire whether they have such a title, which is denied in the answer, it will be well, first, to determine whether, if they have, it will entitle them to the relief they seek. Their counsel claims that, having jurisdiction of the subject-matter of the suit on other grounds, we may proceed to give relief on this ground also. Unfortunately for this view, we have already decided that the other grounds are untenable, and, accordingly, if we grant the relief at all, we must grant it on this ground alone. [1] The suggestion of the bill is, that the claim of the defendants, under the old title, is a cloud on the newly-acquired title, such as the Court will remove. No precedent is cited in support of this view. Is it maintainable on principle? The reason why a Court of Equity relieves against a deed or other writing, which, being invalid or extinguished, exists only as a cloud on the title to which it relates, is the danger of future litigation after the evidence of its invalidity or extinguishment has, by lapse of time, been lost or impaired." 2 Story's Eq. Jur., § 705. But this reason does not hold, where the title supposed to be clouded is a title by possession, and the supposed cloud is a claim under the former title; for, in such a case, the evidence of the extinguishment of the former title, instead of becoming impaired or lost, is continually strengthening, by the lapse of time. In fact, it is the lapse of time, in concurrence with the other statutory requirements, which effects the extinguishment; and it cannot endanger the new title, of which it is the principal constituent. We think, therefore, that if a party has acquired another's land under the Statute of Possessions, he ought to be content with the title which the Statute gives him, and that he cannot, without some further equity, reinforce it by coming into chancery, to compel a release of the title which he has superseded. The remedy which such a party has at law, is entirely adequate to his protection. *Wolcott* v. *Robbins*, 26 Conn. 235. Whether, then, the complainants have the title by possession or not, we think they cannot have the relief which they seek, and that, consequently, their bill must be dismissed with costs.